UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RGIS, LLC,

      Plaintiff,                          CASE NO.: 2:07-CV-10975

vs.                                    DISTRICT JUDGE PAUL V. GADOLA
                                          MAGISTRATE. JUDGE STEVEN D. PEPE

A.S.T., INC., and
PHYLE INDUSTRIES, INC.
         A/K/A PHYLE INDUSTRIES INCORPORATED.,

      Defendants.

_____/


**Report and Recommendation**
**to Deny Plaintiff's Motion for Preliminary Injunction (Dkt. # 12)**


      On March 6, 2007, Plaintiff, RGIS, LLC, ("RGIS" filed an Complaint against Defendants

A.S.T. Inc. ("AST"), and Phyle Industries, Inc., two companies owned by Charles E. Phyle

alleging copyright infringement under 17 U.S.C. § 101 *et seq*. (Dkt. # 1).[1]  On May 23, 2007,

Plaintiff filed a Motion for Preliminary Injunction enjoining Defendants from using in any

manner the subject matter of Plaintiff's copyrights and such remedies as the Court deems

appropriate (Dkt. # 12).  This Motion was referred, pursuant to 28 U.S.C. 636(b)(1)(A) and (B)

for Report and Recommendation (Dkt. # 15).  Following a hearing and significant rounds of

---

[1]On October 16, 2007, Plaintiff was granted leave to file a first amended complaint which
included an additional claim of breach of contract which allegedly arose when counsel for the
Defendant contacted the United States Copyright Office and altered Plaintiff's copyrights (Dkt. #
43).

briefing and supplemental briefing for the reasons stated below, **IT IS RECOMMENDED** that

Plaintiff's motion for a preliminary injunction be **DENIED**

## I.    Background Facts and Plaintiff's Complaint:

Plaintiff, is in the business of taking inventories for clients such as large retail outlets in

which it utilizes a computed system involving hand-held computers designed by AST and

marketed by Defendant Phyle Industries.  Defendant AST designs and manufactures hand-held

computers and other software for use in inventory control which are marketed through Defendant

Phyle Industries to Plaintiff and other companies.  Plaintiff and Defendant maintained a business

relationship for 28 years, until it broke down in 2005 after RGIS was acquired by another

company.  RGIS parted ways with AST and Phyle Industries

As part of this separation, on November 21, 2005, Defendant AST, Inc. executed a

COPYRIGHT ASSIGNMENT to Defendant Phyle Industries of various copyrights later

assigned to Plaintiff (Dkt. 12, Exhibit 1).  On January 27, 2006, Defendant Phyle Industries

executed a SOFTWARE TRANSFER AND COPYRIGHT ASSIGNMENT AGREEMENT in

which certain software related items were transferred and assigned to Plaintiff (Dkt. 12, Exhibit

2 and Dkt. # 33, Exhibit B).  On that same day Defendant Phyle Industries executed a

SOFTWARE AND COPYRIGHT ASSIGNMENT to Plaintiff including all of the software and

the copyrights on the software needed by Plaintiff to continue its operations in selling devices to

undertake business inventories for its clients.

On October 3, 2006, Defendant Phyle Industries executed another abbreviated

COPYRIGHT ASSIGNMENT to Plaintiff which duplicated the earlier assignment and was done

for filing with the Copyright Office.  This 2006 assignment also transferred the U.S. Copyright

Registrations Phyle Industries had on various of the software programs and transferred the

November 29, 2005, U.S. Copyright Application for AUDIT Download Builder  (Dkt. 12,

Exhibits 3 & 4 and  Dkt. # 33, Exhibit C).  Both of these copyright assignments reserved to

Phyle Industries a royalty-free license to use certain Bar Code Algorithms that were part of the

software transferred as well as the Elite III and Elite III UPS Driver software.  As noted below,

the  November 29, 2005, Copyright Application (Dkt. 12, Exhibits 4) for AUDIT Download

Builder contained errors that attorney Neil E. Wallace tried to correct in April 2007.[2]  This

"correction" was undertaken after the copyrights and software was assigned to Plaintiff and after

this litigation was commenced.  It was done without Plaintiff's knowledge or consent.

After the AST and RGIS ended their long term relation, Defendant AST developed a new

business inventory product called Titan EPG.  There is no indication that the two parties had

entered into a non-compete agreement or an agreement that AST would not produce and sell

products for taking business inventories, which it had done for other customers prior to the 2005

parting of ways.   RGIS asserts that the AST's new Titan EPG has many "features,

configurations and functionality that are substantially similar if not identical to that of Plaintiff's

proprietary hardware and software" which Defendant Phyle assigned to Plaintiff (Dkt. # 1, ¶

---

[2] The Original AUDIT Download Builder application was filed by attorney Jeremy D. Bisdorf on
November 29, 2005, for Phyle Industries.  The Bisdorf application noted under § 2 of the
application that the software was not a "work made for hire", under § 3a that "1999" was the
year the work was completed, and under § 3b "September 9, 1999" as the date of first
publication.  Mr. Bisdorf  left blank both the portions under § 6a on DERIVATIVE WORK OR
COMPILATION and under § 6b on "Material Added to this Work." Under § 8 Mr. Bisdorf was
to receive the Registration Certificate.  The modifications of April 2007 for the AUDIT
Download Builder application changed § 2 noting AUDIT Download Builder was a "work made
for hire," and under § 3a the change was "*~~1999~~ * 2005" for the year the work was completed,
and under § 3b the change was "September 9, ~~1999~~ * 2005" as the date of first publication.  In §
6a on DERIVATIVE WORK OR COMPILATION "*previous version" was added and under §
6b on "Material Added to this Work" Mr. Wallace added "*additional or revised text of
computer program."  The asterisks through these changes reference to "*Amended by C.O. from
phone call to Neil E. Wallace on April 13, 2007" written at the top of page 2.

15).[3] RGIS asserts further that based on comparisons in its attached Exhibit F "there are extensive, verbatim replications of Download Builder architecture, verbiage and functionality" (Id. at ¶ 16). The Exhibit F referred to in support of this assertion contains two computer screen shots taken from AST website advertisements that Plaintiff has labeled "(AST) Titan EPG Script Builder" and two nearly identical screen shots labeled "Download Builder" and "Download Builder Action Codes" generated from the AUDIT Download Builder software RGIS acquired from Defendant Phyle Industries (*Id*. at Exhibit F). Plaintiff complains that Defendant utilized copyrighted material owned by Plaintiff in marketing and developing its Titan EPG product.

Defendant AST and its owner, Charles Phyle, acknowledge that before Titan EPG software was fully developed, AST's marketing department utilized as promotional material on its website for the Titan product two screen shots from AUDIT Download Builder, the software transferred to Plaintiff (Dkt. # 17, p. 4-5, and Phyle Declaration, Exhibit # 2 ). AST President Phyle states in his declaration that this was done without the knowledge of the principals at AST AST. He noted that instead of contacting AST about the use of the RGIS screen shots, RGIS gave AST notice of this transgression by filing this law suit. Once notice was provided that these screen shots were being used, President Phyle states that AST ceased usage of the image and he assures RGIS "AST will not use the screen shots again" (*Id. at ¶ 6.).* He further states that AST spent over $1 million developing its new Titan inventory product and that its EPG screens are very different from the AUDIT Download Builder screens.

---

[3] In various places this new AST software product is called "Titan", "Titan EPG", "EPG Script Builder Advanced" but for simplicity AST's new product line software will be referred to as "Titan EPG" throughout this Report and Recommendation.

Thus, AST admits that these screen shots are from AUDIT Download Builder and denies they are from its Titan EPG computer program software as Plaintiff contends that Exhibit F to its complaint demonstrates.  AST contends that "[t]here is no dispute that the actual Titan software does not look like the screen shots on the web page" (Dkt. 11, Defendants Brief at p. 2).[4]  Since this declaration was provided by Mr. Phyle,  RGIS has not asserted anything to dispute the facts that: (i.) the screen shots on AST' website were from the AUDIT Download Builder software and not from Titan software; (ii.) they have been removed from the AST website; and (iii.) they have not been posted by AST anywhere since.  As a result, in light of this unrebutted admission of AST President Phyle and his other assertions, Exhibit F of Plaintiff's complaint would only elucidate the obvious that the two AUDIT Download Builder screen shots that AST admits were on its website would be "substantially similar if not identical" to screen shots that could be generated from Plaintiff's AUDIT Download Builder.  This admission regarding screen shots from RGIS' AUDIT Download Builder being posted on AST's website does not demonstrate that AST's new Titan software is substantially similar to the AUDIT Download Builder software. Because Plaintiff has provided no evidence from a computer forensic expert comparing the source codes of AST Titan products and the  AUDIT Download Builder software or any other software assigned to RGIS, Defendants assert that Plaintiff's complaint is based on attorney assertion only.  There is little to nothing in the record to refute this assertion.

_____

[4] Defendants further assert that after this complaint was filed they set up a meeting with RGIS to show its lawyers and executives the difference between the accused Titan software and the AUDIT Download Builder software RGIS acquired.  It asserts that this "software running side-by side" demonstrated that the Titan screens and those generated by AUDIT Download Builder were very different (Dkt. 11, Defendants brief at 2-3.).

Defendants are sufficiently confident of their position that they seek to have this Court appoint as a Special Master, Dr. Lee A Hollaar, Professor of Computer Science at the University of Utah, a computer expert, who was identified and selected by RGIS as its expert, to undertake a review and analyze all versions of AST' source codes for the Titan products (Dk. # 14, Defendants Brief at p. 2, fn. 2) and compare them to the AUDIT Download Builder source codes.  In a separate order entered this date, that request is being granted to provide this Court with a factual analysis by a competent computer expert skilled in interpreting and comparing computer source codes and who was selected by RGIS to reduce its reason to question his analysis of computer source codes that lie beyond the competence of the two judicial officers assigned to this case.

## II.      Copyright and Preliminary Injunction

The Constitution expressly gives Congress the power to grant protection to original works of authorship.  U.S. Const. Art. I, § 8, cl. 8.  In enacting copyright protection for computer software, Congress defined a computer program as a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result, and it provided that computer software would be protected as a literary work.[5]  17 U.S.C. §§ 101, 201(a).  *See Quinn v. City of Detroit*, 988 F. Supp. 1044 (E.D. Mich. 1997) (A computer program is classified as a "literary work" for purposes of Copyright Act.); *Whelan Assoc. v. Jaslow Dental Lab.*, 797 F.2d

---

[5]17 U.S.C. § 101:

> "Literary works" are works, other than audiovisual works, expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, disks, or cards, in which they are embodied.

1222, 1234 (3d Cir.1986) (Computer programs are entitled to copyright protection as "literary works.").

Plaintiff seeks an injunction to prevent "Defendants, their agents, servants, employees, and attorneys and all persons in active concert or participation with them from copying or otherwise using in any manner the subject matter of Plaintiff's copyrights" (Dkt. # 12). A party seeking an injunction:

> "must demonstrate: (1) that it has suffered irreparable injury; (2) that remedies available at law, such a monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be served by a permanent injunction."

*eBay Inc. v. MercExchange, L.L.C.*, ___ U S ___, 126 S.Ct. 1837, 1839 (2006).

These factors apply equally to motions seeking a preliminary injunction. *Amoco Prod'n Co. v. Village of Gambell, Alaska*, 480 U S 531, 546 n. 12 (1987). A party seeking a preliminary injunction must show a likelihood of success. *Id.* Preliminary injunctions in the copyright context place great emphasis on the likelihood of success analysis as irreparable harm is presumed once a likelihood of success has been established. *See Forry, Inc. V. Neundorfer, Inc.*, 837 F.2d 259, 267 (6th Cir. 1988).

Plaintiff in its motion for a preliminary injunction refers to three different tests which may be used to determine whether a preliminary injunction should be granted: (1) the Mason

test[6], (2) the *Roth-Stenberg* test[7] and the (3) Nimmer test[8] are all cited, but no reference is made a more recent Supreme Court *eBay Inc.* case.

In *eBay*, the Supreme Court held that in a patent infringement case the traditional four part test must be used prior to the granting of a permanent injunction. *Id.* Such a standard is also applicable to requests for preliminary injunctions. *See, Amoco Prod'n Co. v. Village of Gambell, Alaska*, 480 U.S. 531 (1987) (stating that the standard for a preliminary injunction is essentially the same as for a permanent injunction).

In seeking one preliminary injunction, Plaintiff has blurred two requests for preliminary injunction into one claim: (1) an injunction enjoining Defendants' use of Plaintiff's software in screen shots and (2) an injunction enjoining Defendants' alleged violation of Plaintiff's copyrights in the creation of the Titan EPG software. Analysis of Plaintiff's preliminary injunction claim requires separate application of the four-part *eBay* test first to the screen shots and then to the creation of Titan EPG.

---

[6] *Mason County Medical Assoc. v. Knebel*, 563 F.2d 256, 261 (6 Cir. 1977), which utilizes a four part test for determining whether a preliminary injunction should be granted.
[7] *Roth v. Bank of the Commonwealth*, 583 F.2d 527 (6 Cir. 1978) and *Stenberg v. Checker Oil Company*, 573 F.2d 921 (6 Cir. 1978), involved cases where the Sixth Circuit utilized the Second Circuit's two party test for granting an injunction based on the movant's likelihood of success and the degree of injury.
[8] Nimmer in his treatise on Copyright suggests that even when applying the four part test for preliminary injunctions, in most cases it is the "likelihood of success that is determinative." NIMMER ON COPYRIGHT §14.06(A).

Under the *eBay* test, before a preliminary injunction is granted, Plaintiff must show that it has suffered irreparable harm as a result of Defendant's actions.[9][10]

It is not sufficient for Plaintiff to allege that Defendant has copied their software, for there to be an irreparable harm Plaintiff must show that the portion of the software copied was protectible under copyright law. *See Lexmark Int'l. Inc v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004). Such a showing requires analysis and comparison of complex computer software source codes. *See Kohus v. Mariol*, 328 F.3d 848, 857-58 (6th Cir. 2003) (with technical copyright issues, reliance upon an expert is almost a certainty). Yet, as noted above, Plaintiff has provided no technical support for its assertion other than a declaration from its Chief Information Officer, Anthony Baritz which will be discussed below (Dkt. # 22 Exhibit 10).

*Kohus* adopted a two-step approach for analyzing copyright infringement:

> The first step requires identifying which aspects of the artist's work, if any, are protectible by copyright; the second involves determining whether the allegedly infringing work is "substantially similar" to protectible elements of the artist's work.

*Id.* at 55.

---

[9] *See* CJS COPYRIGHT § 131: "To obtain a preliminary injunction against alleged copyright infringement, a party must show a reasonable likelihood that it will succeed on the merits of its copyright infringement claim, and a likelihood that it will suffer irreparable harm if the injunction is denied."

[10] "A copyright plaintiff who makes out a prima facie case of infringement is entitled to a preliminary injunction without a detailed showing of irreparable harm." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3d Cir.1983), *cert. dismissed,* 464 U.S. 1033 (1984).

*See also* The "prevailing view" in cases of copyright infringement is that a showing of likelihood of success on the merits raises a presumption of irreparable harm. This rule applies despite the fact that the copyright owner will suffer only monetary damages, which in other contexts are not usually considered irreparable harm because of the availability of an adequate legal remedy. PATLAWF § 6:88.

The first prong tests originality which is presumptively established by virtue of copyright registration. *See M.M. Bus. Forms Corp. v. Uarco, Inc.*, 472 F.2d 1137, 1139 (6th Cir. 1973). The second prong tests whether any copying occurred (a factual matter) and whether the portions of the work copied were entitled to copyright protection (a legal matter). *See Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 534-35 & n. 14 (5th Cir. 1994). If no direct evidence of copying is available, "claimant may establish this element by showing that the defendant had access to the copyrighted work and that the copyrighted work and the allegedly copied work are substantially similar." *Lexmark* at 534.

In *Kohus*, the Sixth Circuit modified the traditional "ordinary observer" test for substantial similarity. *Kohus*, 328 F.3d at 856. The ordinary observer test is "premised on the notion that the lay public purchases a product at issue, and where the lay audience's untutored judgement determines" differences between products. *Id*. This test has significant drawbacks when the copyright in issue covers a matter aimed at a technical audience.

Instead of always focusing on the general public, *Kohus* determined that the focus should be on the intended audience possessing specialized expertise, in this case a technical audience comprised of those familiar with reading computer source codes. *Id*. at 857.

A.      *The AST Screen Shots Taken from AUDIT Download Builder*

Plaintiff asserts that the AST screen shots "could not have been generated but for copying of Defendants' archival versions of Plaintiff's copyrights" (Dkt. # 12, p. 11).

For purposes of this motion, it can be considered that the first step in analyzing whether Plaintiff has an interest protectible by copyright has been met. This test is presumptively established by virtue of the copyright registration. *See M.M. Bus. Forms Corp. v. Uarco, Inc.*,

472 F.2d 1137, 1139 (6th Cir. 1973).  Plaintiff acquired valid, registered copyrights, from Defendants, for AUDIT Download Builder.  Therefore for purposes of this motion, it is presumptively established that Plaintiff has a protectible interest.

Defendants assert that the screen shots are not themselves protected, yet it has not challenged Plaintiff's assertion that the two screen shots it posted on the AST website were generated from its archived copies of the AUDIT Download Builder software in which RGIS has been assigned copyright protection.

For purposes of this preliminary injunction analysis, it can be presumed that Plaintiff has a reasonable likelihood of success on showing that in posting the two AUDIT Download Builder screen shots AST violated Plaintiff's copyright.  Yet, given the unrebutted assertions that this posting was immediately ended when AST's principals became aware of it, AST's assertions that it will not again post the AUDIT Download Builder screen shots, and the fact that AST no longer needs any AUDIT Download Builder screen shots because it can generate and post Titan EPG screen shots, all of this raises a substantial question of whether RGIS will really face irreparable harm if the preliminary injunction concerning screen shots is not granted. Furthermore, Plaintiff has failed to demonstrate other of the standards set by the *e-Bay* case. RGIS fails to demonstrate that a monetary damage remedy is not sufficient to compensate RGIS for any injury. Furthermore, it is hard to strike a balance of hardships between the Plaintiff and Defendant and hard to find the public interest is served by an injunction against a future action that is unlikely to occur.  Now that AST has fully developed its Titan product, it has no further need to use the AUDIT Download Builder screen shots when it can generate the Titan software screen shots.

Because Plaintiff has failed to demonstrate that a damages remedy at law is insufficient to protect its interests in the unauthorized use of the AUDIT Download Builder screen shots, and has failed to show a reasonable likelihood of a repeat of this action, **IT IS RECOMMENDED** that Plaintiff's Motion for a Preliminary Injunction be **DENIED** with respect to the AUDIT Download Builder screen shots.

B.      *The Titan EPG Software*

Plaintiff's primary goal in this motion is to enjoin Defendants from selling or using Defendant's Titan EPG software because RGIS's claim that it violates the copyrights RGIS obtained from Defendant Phyle Industries.  This is really the heart of Plaintiff's complaint – to remove a competing software and hardware product to perform inventories.  Yet, to do this Plaintiff must provide evidentiary support for the claim that Defendant AST's Titan EPG violates protectible portions of Plaintiff's copyrights.  Plaintiff must demonstrate a likelihood of success in proving that AST copied the software of RGIS (a factual matter) and that the portions copied were entitled to copyright protection (a legal matter).  *See Lexmark Int'l, supra,* 387 F 3d at 534.

Initially, Plaintiffs believed that the two screen shots on the AST website were generated from the Titan EPG software.  If true, this would be some evidence that Titan EPG software was derived from the AUDIT Download Builder software.  Mr. Phyle's unrebutted declaration admits that the AUDIT Download Builder screen shots were posted for a period.  Yet, he clarifies that these two screen shots were not taken from Titan EPG software because it had not yet been fully developed when someone in his marketing department posted the two AUDIT Download Builder screen shots.  If these screen shots came from the AUDIT Download Builder

12

software as Mr. Phyle indicates, that may prove a copyright violation of the AUDIT Download Builder software to generate these two screen shots as discussed in the previous section. But it is no proof that the protected portions of the AUDIT Download Builder software (or other software that Phyle Industries assigned to RGIS) were copied in the development of the Titan EPG software. Thus, the screen shot evidence is of little to no probative value that the Titan EPG contains portions of protected software from AUDIT Download Builder.[11]

The other evidence RIGS presents in its initial brief and supplemental brief is from a draft Agreement for Substantial Similarity Determination (Dkt. 12, Exhibit 9). While RGIS asserts this document was not evidence barred from use to prove liability under Fed. R. Evid. 408(a)(2)[12], the portion of this document was drafted by lawyers for AST in an offer on how to compromise and settle this copyright dispute in its entirety. Its opening line corroborates this stating "In and effort to expedite resolution of this case . . . ." As such, it should be excluded from consideration of potential liability on this motion for a preliminary injunction.

That leaves the record barren of sufficient evidence from which this Court could determine that Plaintiff has a reasonable likelihood of success on the merits. There is no direct evidence of copying of AUDIT Download Builder in the development of the Titan EPG

_____

[11] The screen shots is still some evidence that during the development of the AUDIT Download Builder software AST had available the AUDIT Download Builder software for copying had it chosen to do so.

[12] **Rule 408. Compromise and Offers to Compromise**
**(a) Prohibited uses.**--Evidence of the following is not admissible on behalf of any party, when offered to prove liability for . . . a claim that was disputed as to validity . . . .
* * *
    **(2)** . . . statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

software.  There is no expert or other testimony comparing the AUDIT Download Builder

software to the Titan EPG software to demonstrate substantial similarity.  There is only evidence

that AST had access to the AUDIT Download Builder software while it was developing Titan

EPG.  That alone is insufficient evidence upon which to find a reasonable likelihood of success.

Because RGIS fails to show a reasonable likelihood of success on the merits it fails to

demonstrate that it has suffered irreparable injury under the *e-Bay* standards. Thus, **IT IS**

**RECOMMENDED** that Plaintiff's Motion for a Preliminary Injunction be **DENIED** with respect to

the Titan Software

C.      *Alternate Findings on The Titan EPG Software*

If this Court were to determine that the AST statements made in the Agreement for

Substantial Similarity Determination are not barred from use to prove liability under Fed.

R. Evid. 408(a)(2), Plaintiff still fails to present sufficient evidence to demonstrate a substantial

likelihood of success on the merits.

The Agreement for Substantial Similarity Determination AST provided that Professor

Hollaar, who had been selected as an computer software expert by RGIS, would review and

compare the computer source codes and object codes for AST's EPG Script Builder Advanced

and RGIS's AUDIT Download Builder to determine if they were substantially similar.  In doing

this comparison, AST sought to exclude from comparison, among other items, eight files in the

Titan EPG program.  Because these 8 files are in the Titan EPG software and also in the AUDIT

Download Builder software, RGIS asserts these 8 files prove AST violated RGIS's copyright

protections in AUDIT Download Builder .  Since this accusation against Defendants, counsel for

RGIS now acknowledges that 6 of these 8 files are actually Microsoft products to which it has no

14

claim of copyright protection (*See* Dkt. # 32, fn 3.).  That leaves two files in Titan EPG that are "WinMisc.c" and "WinMisc.h."

In its draft exclusion of these two files in the Agreement for Substantial Similarity Determination, AST states

- • The source code in the following files is similar between the two programs in question because it is a library of functions common to many Windows programs that has been used by AST in nearly every Windows program developed before, during, and since the writing of AUDIT Download Builder
  - ○ WinMisc.c, WinMisc.h

Plaintiff proffered in support of its infringement claim that

At lease eight (8)  files in the EPG program appear identical to corresponding source code in Plaintiff's Copyrights.  Further investigation of EPG will undoubtedly reveal greater evidence of Defendants copying.

(Dkt. 12, Plaintiff's Brief at p. 11). As noted above, Plaintiff now acknowledges that 6 of the 8 files it accused AST of copying from AUDIT Download Builder are actually Microsoft copyrighted items to which RGIS has no claim.  Thus, the charge of infringement has been narrowed to the two WinMisc files that AST admits in the Agreement for Substantial Similarity Determination are in both AUDIT Download Builder and Titan EGP.

If no direct evidence of copying is available,[13] "claimant may establish this element by showing that the defendant had access to the copyrighted work and that the copyrighted work and the allegedly copied work are substantially similar."  *Lexmark* at 534.  Here it is not disputed

---

[13] Defendant agreed to have a expert of Plaintiff's choosing evaluate the code.  Terms of agreement could not be reached, but this reliance on outside experts clearly indicates the need for expert analysis of the software code.

that AST had access to the AUDIT Download Builder software when it developed the Titan EGP software. Other than this purported "admission" by AST regarding WinMisc.c, and WinMisc.h being in both source codes, Plaintiff provides no factual basis supporting its claim that the source code in Titan EPG violates its AUDIT Download Builder copyrights. Plaintiff's assertion that the files in question "appear identical to corresponding source code in Plaintiff's copyrights," is of little help in the absence of a comparison of the respective source codes by a computer expert. Assertions by counsel are no substitute for competent forensic expert testimony by one who has actually examined both source codes and one who knows what in AUDIT Download Builder is original and what in AUDIT Download Builder was created earlier and has separate copyright protection or is publically available to all. Additionally, similarity of source codes would not prove a copyright violation if the similar parts from a copyright work are of portions of that work not subject to copyright protection. The copyright owner of a book on THE GREAT SPEECHES OF LINCOLN cannot claim copyright protection on The Gettysburg Address contained in the book.

Determining what is and is not subject to copyright protection in computer source codes is a more complicated task than tracing Lincoln's prose. When the copyrighted item is technical, *Kohus* notes that a substantial similarity determination requires the examination by one capable of understanding technical matters where ordinary observers are unlikely to understand them. *Kohus*, 328 F.3d at 858. Similarly, in the present case, reliable proofs will require analysis of computer source codes which are clearly beyond the abilities of ordinary observers. Yet, Plaintiff has not provided any analysis of the two source codes and there has been no expert testimony in support of its assertion of substantial similarity of Titan EGB and AUDIT Download Builder (Dkt. 12, p 11).

Instead Plaintiff has provided the declaration of the RGIS Chief Information Officer ("CIO"), Anthony Baritz, whose credentials might well qualify him as a forensic computer expert had he made the proper comparisons (Dkt. # 22, Ex. 10). He asserts a familiarity with the software in AUDIT Download Builder including its source codes and object codes. While CIO Baritz correctly identifies the two screen shots on AST's website as being from AUDIT Download Builder (a fact admitted by Mr. Phyle), his assertions concerning WinMisc files are based not on source codes but on the Copyright notice on the WinMisc files and the January 27, 2006, Software Transfer and Copyright Assignment from Phyle Industries to RGIS. He notes that the two WinMisc files in the AUDIT Download Builder source code begin with:

```
//      Audit Down Builder
//      Copyright © 1998-2005 by A.S.T., Inc. All rights reserved.
//      Licensed to RGIS Information Specialists
```

CIO Baritz interprets this as meaning that from 1998 to 2005 AST created the WinMisc source code files and that AST claimed copyrights in those codes. It is his understanding that the January 27, 2006, Software Transfer and Copyright Assignment from Phyle Industries to RGIS assigned all copyrights in the AUDIT Download Builder files, including WinMisc files. He had also reviewed the Agreement for Substantial Similarity Determination and the statement concerning the both AUDIT Download Builder and Titan EPG source codes being similar in containing WinMisc.c and WinMisc.h files. He "interprets this to mean that the WinMisc files discussed above were reused by Defendants in their [Titan] EPG Script Builder software." He then professes ignorance why the 6 files (later acknowledged to have copyrights owned by Microsoft) were excluded from the substantial similarity comparison.

While CIO Baritz may have expertise in reading and comparing computer source codes, his declaration has lesser force in his interpretation of copyright law. His declaration is devoid of any comparative analysis of source codes. Its basic premise is that Phyle Industries assigned to RGIS all of the copyrights and software involved in AUDIT Download Builder, and because AUDIT Download Builder includes WinMisc files, RGIS acquired copyrights in all WinMisc software, and any use by AST of any WinMisc source files after January 27, 2006, in the development of Titan EPG violates the copyrights assigned to RGIS. This syllogism is correct except for the premise that the January 27, 2006, Software Transfer and Copyright Assignment from Phyle Industries to RGIS assigned to RGIS the sole and exclusive rights to use any preexisting WinMisc source codes such as the copyrighted 1997 version of WinMisc. To use the metaphor noted above, were the copyright owner of THE GREAT SPEECHES OF LINCOLN to assign to RGIS all of its copyright interest in the book, RGIS could not claim copyright protection in The Gettysburg Address, and that author could republish that landmark speech without liability.[14]

    (1.) <u>The WinMisc Files and Derivative Works:</u>

---

[14] This analogy is not exact for the present case because no one owns copyright interest in The Gettysburg Address. But for heuristic purposes, were we to assume that the author of THE GREAT SPEECHES OF LINCOLN also had earlier copyrighted The Gettysburg Address than that author's assigning the copyright to THE GREAT SPEECHES OF LINCOLN that still would not, without more, be an assignment of that author's copyright in The Gettysburg Address. While the purchaser of the copyrights in THE GREAT SPEECHES OF LINCOLN might be licensed to republish The Gettysburg Address, the purchaser could not preclude the seller/author or other of the seller/author's licensees from also replicating The Gettysburg Address. He could, however, stop author/seller and others from copying of the protected portions of THE GREAT SPEECHES OF LINCOLN. If the author/seller drafted, for example a comic parody of The Gettysburg Address in THE GREAT SPEECHES OF LINCOLN, the purchaser of the copyright interest in THE GREAT SPEECHES OF LINCOLN could assert copyright protection to that comic parody of The Gettysburg Address.

Examination of the agreement transferring the copyrights to Plaintiff make it clear that Defendant Phyle Industries transferred all rights and the copyrights in AUDIT Download Builder software to Plaintiff. *See* Dkt. # 33, Ex. C. Because it contains certain WinMisc files and AST acknowledges that Titan EPG contains WinMisc files, Plaintiff asserts this proves AST copied protected software. What is significant is whether Audit Download Builder, as transferred to Plaintiff, is an original or derivative work and more importantly whether or not the WinMisc files utilized in the Titan EPG software are covered by the copyrights for AUDIT Download Builder or by a separate and prior copyright that remains in Defendants' possession.

The parties appear to disagree as to whether or not the copyright assignment of AUDIT Download Builder anticipated that it was an "original" or a "derivative" work. 17 U.S.C. §101 defines a derivative work as:

> a work based upon one or more pre-existing works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgement, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."

17 U.S.C. § 101.

Exclusive rights to prepare a derivative work belong to the copyright holder. 17 U.S.C. § 106(2). To be considered derivative there must be an addition that is more than merely trivial before it warrants copyright protection as a derivative work. 149 A.L.R. Fed. 527. *See Dahlen v. Michigan Licensed Beverage Ass'n*, 132 F. Supp. 2d 574 (E.D. Mich. 2001).

The Copyright Act makes clear that a derivative work does not imply any exclusive right in the preexisting material. "The copyright in such work is independent of, and does not affect

or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material."  17 U.S.C. § 103(b).  *See Murray Hill v. ABC Communications, Inc.*, 264 F.3d 622, 630 (6th Cir. 2001) (The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material.).

In its Reply in Support of its Motion for Preliminary Injunction, Plaintiff notes that "Defendants claimed and reserved copyrights in the files at the time the files were created (1998 – 2005), at the time the files were licensed to RGIS, and at the time the works were registered. Defendants then sold the copyrights to RGIS" (Dkt. # 22, p. 2).  Defendants, meanwhile, claim that its 1997 WinMisc program, utilized in Titan EPG, pre-dated AUDIT Download Builder, was never part of the copyright for AUDIT Download Builder and was not assigned to Plaintiff (Dkt. # 32).  A September 6, 2007, declaration of AST's Director of Information Technology, George Hatchew,  provides unrebutted information that puts in perspective this "smoking gun" evidence concerning the WinMisc module in AUDIT Download Builder and in Titan EPG.  He explains that the module called WinMisc was first created in 1997 (Dkt. # 32-2).  When in August 1998 AST began work on the AUDIT Download Builder source code, they "needed to present certain dialog boxes (*e.g.*, "yes" or "no" buttons; "OK" or "Cancel" buttons) to the user.  Because WinMisc could perform that task, AST modified WinMisc and used the modified version in AUDIT Download Builder."  He calls the WinMisc modules "a tiny part of the Audit Download Builder source code."

In adapting a 1997 WinMisc button dialog box module to put certain buttons into the AUDIT Download Builder screens, Defendants assert that its preexisting 1997 WinMisc program was not transferred as part of the Software Transfer and Copyright Agreement for several reasons. First, the WinMisc program was created in 1997, and creation of AUDIT Download Builder began in 1998 (Dkt. # 32, Ex. 1, p. 1 & 2). Second, the 1997 version of WinMisc is covered by a separate copyright which was not assigned to Plaintiff (Dkt. # 38, p. 2). It asserts that RGIS has no proofs to the contrary. It is not listed in Exhibits A or B through F of the Software Transfer and Copyright Agreement. The version of WinMisc included in AUDIT Download Builder is a modified version of 1997 WinMisc program and as such the WinMisc program in AUDIT Download Builder is not the one created in 1997 (Dkt. # 32, Ex. 1, p. 2). The third sentence of paragraph 3 of the Software Transfer and Copyright Agreement grants RGIS a perpetual, royalty free license to use and modify AUDIT Download Builder including the WinMisc portion of its source code. That language would not have been necessary if Phyle Industries had assigned to RGIS the preexisting works such as its 1997 WinMisc. Plaintiff does have rights to the modified WinMisc version adapted for use in the AUDIT Download Builder source code, but it cannot claim that the preexisting 1997 copyright on this widely used dialogue box button module, WinMisc, became the exclusive property of RGIS.

Plaintiff argues that in the transfer agreement, Phyle Industries assigned to RGIS "all copyrights to the Software and assigns to RGIS all its rights in and to the pending copyright applications for the Copyright Registration Pending Software" (Dkt. # 36, p. 2). This is precisely what Defendants did – they transferred all rights in AUDIT Download Builder to Plaintiff, including the modified WinMisc program. Plaintiff, in its brief notes that the programs

created from 1998-2005 were transferred to it. This statement acknowledges that the original WinMisc file pre-dated the software copyrights assigned to them. Plaintiff has the rights to the AUDIT Download Builder program including the modified WinMisc program. Regardless, the 1997 WinMisc program is covered by its own independent copyright and is not part of the rights transferred to the Plaintiff. To again borrow the analogy as modified in footnote 14 the buyer of the Copyright interests in THE GREAT SPEECHES OF LINCOLN could preclude use of the comedy parody version of the Gettysburg Address, but not the preexisting original

AUDIT Download Builder is a derivative work. The programs is based upon prior programs and involves "additions that are more than merely trivial" thus warranting copyright protection as a derivative work. *See* 149 A.L.R. Fed. 527. Nothing in this analysis lessens Plaintiff's rights as holder of the AUDIT Download Builder copyrights covering the new and original portions of that source code. While the copyright in the 2005 version of AUDIT Download Builder was possibly registered before any registration of the 1997 version of WinMisc, that does not undermine Defendants' interest in owning and using the 1997 version of WinMisc. The Sixth Circuit has noted in *Murray Hill* that "an author may have a copyright in all works of authorship regardless of whether he registers that copyright" (Dkt. # 42, p. 28). "The registration requirement under section 411(b) is a jurisdictional prerequisite to the right of the holder to enforce the copyright in federal court." *Murray Hill*, 264 F.3d at 630 (6th Cir. 2001).[15]

---

[15] 17 U.S.C. § 411(a) states that "no action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made in accordance with this title."

Neil Wallace in April 2007 altered the registration to note that AUDIT Download Builder was a derivative work from a previous computer program text. While this was done after assigning the copyright application to Plaintiff and was done without notifying Plaintiff, that action – even if separately actionable – does not change the legal status of AUDIT Download Builder. That action does not alter the bundle of rights available to Plaintiff. Whether a work is derivative is a question of law. *See* 17 U.S.C. § 101. Determination of whether a work is derivative is analyzed by reference to the statute and to the historical facts concerning what in the work is original and what in the work was drawn from previous works. It is not determined by what is stated in an application to register a copyright. Plaintiff has rights to protect the original portions of AUDIT Download and these rights include copyright protection over the version of WinMisc included in AUDIT Download Builder assuming these modification of the 1997 WinMisc were not trivial.

Plaintiff RGIS may well have a legitimate claim that Defendant AST in developing Titan EPG copied protected portions of the AUDIT Download Builder or other software that Plaintiff purchased from Phyle Industries. The answer to that question will await a competent comparison of the source codes of the two systems. On the present submissions, Plaintiff has failed to demonstrate a substantial likelihood of success on the merits of that copyright claim and thus has failed to show an irreparable harm that is necessary for granting a preliminary injunction.

RGIS in its primary briefs cites various cases suggesting that the standard is not a reasonable likelihood of success or a strong probability of success but rather a preliminary injunction can be granted upon the showing of a reasonable possibility of success. All findings and

recommendations in this Report and Recommendation would not be altered were this Court to determine that the standard is a reasonable possibility of success, because absent some expert testimony by one who has identified and compared the original portions of AUDIT Download Builder to the Titan EPG source codes, such a finding should not be made under any of these standards. Mere access to the AUDIT Download Builder source codes, acknowledged use of two screen shots from AUDIT Download Builder, and acknowledged use of the 1997 WinMisc file in which AST's Director of Technology asserts an unrebutted claim of a prior copyright interest is insufficient evidence upon which to grant a preliminary injunction.

Because Plaintiff has failed to meet the first of the *e-Bay* standards, this Court need not analyze the other three – the inadequacy of other remedies, the balance of hardships between the plaintiff and defendant, and public policy. Absent a showing of copying it would be an unfair hardship and not in the public interest to prevent AST from continuing to market Titan inventory products to its customers who compete with RGIS in that field.

**B.     Attorney's Fees:**

Parties to the suit seek attorney's fees from one another (Dkt. # 17 p. 3, # 22 p. 5). Defendants' cite 28 U.S.C. § 1927 in support of their request, and Plaintiff claim must await further resolution of the disputed claims cites no authority.[16]

Defendants' requests for attorneys fee is denied because if cannot presently be determined that it has met 28 U.S.C. § 1927. Regarding the RGIS request for a preliminary injunction, had Defendants utilized Fed. R. Civ. P. 11, and set out the clarifying facts it is

---

[16] 28 U.S.C. § 1927 states: Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

possible RGIS would have withdrawn its request during the "safe harbor" period provided in that rule. While Defendants will argue that is not a likely scenario they may be right, but here resort to Rule 11 seems more appropriate than use of 28 U.S.C. § 1927 and its "unreasonable or vexatious" threshold for imposing a sanction.

**C.      Recommendation**

For the reasons above, **IT IS RECOMMENDED** that Plaintiff's motion for a preliminary injunction enjoining Defendants' use of screen shots of AUDIT Down Load Builder be **DENIED**;

**IT IS FURTHER RECOMMENDED** that Plaintiffs motion for a preliminary injunction enjoining the sale and marketing of Titan EPG be **DENIED**; and

**IT IS FURTHER  RECOMMENDED** that Plaintiff's and Defendant's requests for attorneys fees be **DENIED**.

The parties may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Sec'y of HHS, 932 F.2d 505 (6th Cir. 1991); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation.  Willis v. Sec'y of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370,1373 (6th Cir. 1987).

Dated: January 22, 2008                         s/Steven D. Pepe_____
Ann Arbor, Michigan                             United States Magistrate Judge




**Certificate of Service**

I hereby certify that a copy of this Report and Recommendation was served upon the Plaintiff by U. S. Mail on January 22, 2008

s/Alissa Greer
Courtroom Deputy Clerk